IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ANN E. HATCH,

        Plaintiff,                           Case No.: 16-cv-802

   v.

BRILLION SCHOOL DISTRICT,

        Defendant.

## PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS

TO:   Brillion School District
      c/o Attorneys John A. Haase and Amber C. Coisman
      Godfrey & Kahn, S.C.
      200 South Washington Street, Suite 100
      Green Bay, WI 54301-4298

### GENERAL AND CONTINUING OBJECTIONS

1.    Plaintiff objects to the extent that the Interrogatories and/or Requests for Admission and Production of Documents seek disclosure of anything within the scope of the attorney-client privilege, work product doctrine, or any other privilege or limitation on discovery recognized by law. In the event any privileged information is disclosed by Plaintiff in connection with these responses, such disclosure is inadvertent, unknowing, and does not constitute a waiver of such privilege.

2.    Plaintiff objects to the extent that these Interrogatories and/or Requests for Admission and Production of Documents seek information or

**EXHIBIT**

**A**

documents that are irrelevant or not reasonably calculated to lead to the discovery of admissible evidence.

3.    Plaintiff objects to the extent that these Interrogatories and/or Requests for Admission and Production of Documents are overly broad, unduly burdensome, or appear to be proffered merely for the purpose of annoyance, harassment or to cause undue burden and expense.

4.    Plaintiff objects to any conditions, instructions, statements, terms, definitions, or requirements contained in Defendant's discovery that seek to modify the obligations set forth by federal law. All such conditions, instructions, statements, terms, definitions, or requirements are not accepted and have been disregarded.

5.    Plaintiff's responses contained herein are based upon the information available to Plaintiff as of the date these responses are signed by counsel. Plaintiff reserves the right to supplement or amend these responses to the full extent allowed by law, and as required by Fed. R. Civ. P. 26(e).

6.    Plaintiff objects to the use of "all," "every," "each," "any," and similar terms as overly broad and unduly burdensome. Plaintiff will make a reasonable search of the information and documents available to her for responsive, non-privileged information and documents.

7.    Plaintiff objects to the extent that any requests require knowledge that Plaintiff does not possess.

8.    The above-stated objections are general and continuing in nature. They are incorporated into each response below, as if fully stated therein. The general and continuing objections shall be construed alongside and in addition to any specific objections stated below.

Subject to the forgoing General and Continuing Objections and without waiver of same, Plaintiff responds to Defendant's First Set of Discovery Requests as follows:

## REQUEST FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.**    Admit that the document attached hereto as Exhibit A is a true and correct copy of the School District's Harassment and Complaint Policies.

**RESPONSE:**  Deny. The document marked as Exhibit A is a true and correct copy of the School District's Harassment and Complaint Policies effective August 15, 2011. The District's Harassment and Complaint policies prior to August 15, 2011 were different. Please see documents Bates-stamped AH000087-AH000090.

**REQUEST FOR ADMISSION NO. 2.**    Admit that you were hired by the School District as a part-time Middle School Principal in 2006.

**RESPONSE:**  Deny. The position of Middle School Principal was added to Plaintiff's already full-time administrative contract in 2006.  Plaintiff's position as principal was not part-time.

**REQUEST FOR ADMISSION NO. 3.** Admit that you retained some of your duties and responsibilities as a school psychologist when you assumed the position

3

of Middle School Principal in 2006.

**RESPONSE:** Deny. Plaintiff retained *all* of her duties and responsibilities as school psychologist when she assumed the position of Middle School Principal in 2006. Further, Plaintiff was the only certified and acting school psychologist on staff.

**REQUEST FOR ADMISSION NO. 4.** Admit that you retained some of your duties and responsibilities as a special education coordinator when you assumed the position of Middle School Principal in 2006.

**RESPONSE:** Admit. Plaintiff retained many of her duties and responsibilities as a special education coordinator when she assumed the position of Middle School Principal in 2006.

**REQUEST FOR ADMISSION NO. 5.** Admit that you did not have any prior school administration experience when you assumed the position of Middle School Principal in 2006.

**RESPONSE:** Deny. Plaintiff had been an administrator in the Brillion School District since 1987. She was on the administrative team, had administrative contract(s) and many administrator responsibilities. She served as the acting principal on two (2) separate occasions when then principals Ken Keenlance and Jerry Novak resigned mid school year. She was also the summer school principal for at-risk students at the High School for approximately five (5) years. Please see documents Bates-stamped AH000091-AH000096.

4

**REQUEST FOR ADMISSION NO. 6.** Admit that Madison met with you to review your Administration Evaluation Mid-Year Review.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 7.** Admit that by the end of 2011, you did not meet two of your three goals for the year.

**RESPONSE:** Deny. Goals #1 and #2 had multiple subparts; evidence of completion of a goal "may include" completion of the subparts. Regarding 2011 Goal #1 (To develop practices and programs that promote diminishing separate buildings and subject matter); Plaintiff implemented a literacy block in 6th and 7th grades, and implementation in 8th grade was impossible due to the requirements of the high school, there being only 2.5 teachers for 8th grade, and the fact that the .5 teacher was shared with the high school and not certified to teach any literacy classes; Plaintiff made substantial efforts to "plan[sic] for" and "develop" MAC classrooms including visiting the Martin School in Green Bay on April 14, 2011, and after Madison noted that this was a 4-5 MAC and that he wanted Plaintiff to visit a 5-6 MAC, she did so. Regarding 2011 Goal #2 (to work with the elementary principal to have RTI (Response to Intervention) implemented in grades 1-8); Plaintiff worked with the elementary principal (who was on maternity leave for 3 months of that academic year) and the RTI consultant to develop RTI implementation in grades 1-8. Specifically, a 3-year implementation plan was developed, a screening and progress monitoring tool was purchased and put into place, benchmarking began, training took place on several occasions for teachers on RTI and their roles in RTI

5

process in both the elementary and middle schools, interventionists were established (elementary – Sue Brandes, Mark Rajkovich, Lucy Hartenbach (formerly Lucy Konop); middle school – Jerry Bronson and Wendy Walters), an intervention period was established within the school day, students were provided those interventions in reading and math, LD referrals decreased, the TOSA (teacher on special assignment) worked directly, on a regular basis with regular education teachers (K-8), during weekly planning meetings to coach them on how to best meet the needs of their struggling students identified on the progress monitoring as directed for legal compliance, Plaintiff pursued obtaining an established viable literacy curriculum in the middle school but was denied (elementary school principal was later able to obtain); a systematic data collection process was implemented (Aims Web was used to do weekly probes for students to determine progress in Tier 2 and 3 interventions and to Benchmark all students 3 times a year). Regarding Goal #3 (completion of assessment procedures in middle school); the middle school teachers were given an In-service training on March 8, 2011 regarding assessment procedures and using BYOC (build your own curriculum) software and all middle school teachers completed assessment procedures. Please see documents Bates-stamped AH000027-AH000028, AH000098-AH000102 and AH000105-AH000106.

**REQUEST FOR ADMISSION NO. 8.** Admit that your 2012 goals were the same as your 2011 goals.

**RESPONSE:** Deny. Plaintiff admits that two (2) of the three (3) goals

assigned to her by Madison in 2012 were the same as those assigned in 2011. Plaintiff denies that the goals she created for herself in 2012 were the same as her 2011 goals. Plaintiff further notes that the third goal assigned by Madison in 2011 and the third goal assigned by Madison in 2012 were different. Please see documents Bates-stamped AH000064-AH000067 and AH000143-AH000145.

**REQUEST FOR ADMISSION NO. 9.** Admit that the document attached hereto as Exhibit B is a true and correct copy of the letter sent by your prior attorney, Terry Kilroy, dated August 30, 2011, to Brian Horn, the School Board President.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 10.** Admit that the August 30, 2011 letter from Attorney Kilroy states that Madison retaliated against you in violation of your First Amendment right to free speech.

**RESPONSE:** Objection. The document referenced in Request for Admission No. 10 is a compromise offer and is, therefore, inadmissible as evidence pursuant to the limitations set forth in Fed. R. Evid. 408. Subject to and without waiving any general or specific objections, Plaintiff responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 11.** Admit that the August 30, 2011 letter from Attorney Kilroy makes no mention of any alleged discriminatory or retaliatory conduct by Madison as a result of your age or sex.

**RESPONSE:** Objection. The document referenced in Request for Admission No. 11 is a compromise offer and is, therefore, inadmissible as evidence pursuant to

7

the limitations set forth in Fed. R. Evid. 408. Subject to and without waiving any general or specific objections, Plaintiff responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 12.** Admit that you refused to cooperate and work with Madison to meet your goals for 2011 and 2012.

**RESPONSE:** Deny. Madison told Plaintiff that they would meet several times during the school year to review her progress. Plaintiff was agreeable this, however, no meetings took place until Plaintiff's January review. No discussions were held about Plaintiff's goals between the July 11, 2011 and January 25, 2012 reviews.

**REQUEST FOR ADMISSION NO. 13.** Admit that Madison did not make any comments to you about your gender or age during your employment as Middle School Principal.

**RESPONSE:** Deny. Madison made multiple statements to Plaintiff about her gender and/or age, including: that he believed it was unusual for a woman to be coaching a boys' varsity sport and implying that Plaintiff should be honored to be allowed to coach boys golf; and if Plaintiff made a mistake or couldn't recall something, Madison would frequently comment that the reason was that Plaintiff was menopausal or old or because of a "lack of estrogen in her head."

**REQUEST FOR ADMISSION NO. 14.** Admit that you never advised the School District during your employment there that you were required to work more hours than other administrators.

**RESPONSE:** Deny. Plaintiff advised Madison on numerous occasions.

Madison told Plaintiff to quit complaining, that he was tired of hearing about it. Plaintiff also recalls Brian Horn during a board meeting referencing "a double whammy" in terms of Plaintiff's work-load – referencing the fact that Plaintiff maintained almost all of her prior duties when she accepted the middle school principal position.

**REQUEST FOR ADMISSION NO. 15.** Admit that you never advised the School District during your employment there that you were prohibited from using district vehicles for school-related use by Madison.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 16.** Admit that you never advised the School District during your employment there that you were assigned a substantially greater number of policies than other administrators to review and revise between 2005 and 2007.

**RESPONSE:** Deny. Plaintiff advised Madison, who provided no remedy.

**REQUEST FOR ADMISSION NO. 17.** Admit that your responsibilities as golf coach were reduced in 2010.

**RESPONSE:** Deny. Plaintiff was the Head Coach from 1997 through 2011, when Madison eliminated her coaching duties. Upon Plaintiff's request, an assistant coach was brought on after she became the middle school principal in the spring of 2007. For the following year, the spring 2008 season, Plaintiff agreed to reduce her contract so that her assistant coach could be paid more. Please see documents Bates-stamped AH000127-AH000129.

9

**REQUEST FOR ADMISSION NO. 18.** Admit that you voluntarily resigned from your employment with the School District to take a job within the Neenah School District.

**RESPONSE:** Admit. Plaintiff's resignation came after nearly two (2) months of complete prohibition from doing any work for the District or reporting to work at the District. Plaintiff received her Final Notice of Nonrenewal of her contract on June 27, 2012. That same day, Madison instructed Plaintiff to "not report to work prior to August 13th." A month later, on July 26, 2012, Madison reiterated that Plaintiff was not to report to the District for work "at this time" and that "[t]his will continue until further notice from the Board." In this context, after being prohibited from preparing for the coming school year, Plaintiff resigned. The subject line of Plaintiff's August 23, 2012 letter of resignation is, "Constructive Termination of Services." Please see document Bates-stamped AH000135.

## INTERROGATORIES

**INTERROGATORY NO. 1.** If your answer to any of the foregoing Requests for Admission is anything other than an unqualified admission, state every fact and identify every document which you contend supports your response. Include in your answer the identity of all persons who have personal knowledge of the facts upon which you rely for your response as well as the facts known by each such person.

**RESPONSE:** Plaintiff objects to this interrogatory on the grounds that it requests information that Plaintiff does not have personal knowledge of. Subject to and without waiving any general or specific objections, please see Plaintiff's

10

Responses to Request for Admissions. To the extent Plaintiff is able to do so, she has identified individuals with personal knowledge of the relevant facts upon which she bases her responses.

**INTERROGATORY NO. 2.** Identify each person likely to have discoverable knowledge or information related to the allegations in your Complaint. In your answer, provide a brief summary of the knowledge or information each person knows or possesses.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving any general or specific objections, Dominick Madison, Renee Maeder, Brian Horn, Steve Klessig, Paul Nistler, Pete Kittel, Donna Haese, Marge Bauknecht, Deb Phipps, Ben Bastian, Brian Starzak, Dana Irish, Tiffanie Grodevant (Nigbor), Cathy Prozanski, Shannon Schindel (Hobbs), Deborah Boettcher, Dr. Nissan Bar-Lev, Deb Koerth, Kelly Heinke, Denise Hasbargen, Paula Kalies, Gordy Gasch, Victoria L. Holt, Kim Madison and Dr. Nancy Vandeput may have knowledge or information related to the allegations in Plaintiff's Complaint. Plaintiff's co-workers in the district may have discoverable information regarding Madison's discriminatory treatment toward older female employees regarding requesting time off and vacation, Madison's preferential treatment toward requests for time off and vacation from younger employees, Madison's disparaging comments toward women including library aid Coree Wallender and his ex-wife Kim Madison, distinct instances when

11

Madison yelled, used profanity, or otherwise acted or communicated inappropriately in a work setting, and Madison's erratic behavior generally. Prozanski, Grodevant, and Nistler have personal knowledge of their salary information and duties in comparison to Hatch. School board members may have discoverable knowledge or information regarding Plaintiff's complaint about Madison in late June 2011 and the subsequent investigation.

Madison: Madison has knowledge because he behaved in a discriminatory manner which led to Ms. Hatch's dismissal after he gained knowledge that Ms. Hatch had reported his behavior.

Maeder: Ms. Hatch, as well as other individuals, reported Madison's behavior to Maeder; Maeder indicated to Ann, "I have had so many complaints about Madison's behavior."

Horn: Maeder reported the email incident to Horn so he had knowledge of Ms. Hatch's specific allegations.

Klessig: Reported concerns after a board of education meeting about Madison's behavior, which Ms. Hatch heard.

Gasch: Conversation with Hatch occurred in the spring of 2012 with Gasch admitting that Madison's behavior was discriminatory and retaliatory. Mr. Gasch is a retired teacher from Brillion who is a school board member.

Kittel: Personally witnessed discriminatory behavior towards Hatch.

Haese: Haese became aware of Hatch's complaint when the Golf coaching position was posted at Brillion High School. She called Ms. Hatch and asked why

12

she was resigning. Ms. Hatch told her the situation. The conversation took place over the telephone. Subsequent conversations took place in Ms. Hatch's office. The substance of the conversations was disbelief at Madison's "ridiculous" evaluations of Ms. Hatch and that Ms. Hatch was potentially going to be non-renewed.

Bauknecht & Phipps: Both experienced Madison's discriminatory behavior and potentially witnessed his behavior towards Ms. Hatch.

Bastian: Witnessed Madison's erratic behavior directed towards Ms. Hatch and was concerned for her physical safety due to Madison's behavior.

Starzak: Personally witnessed Madison's discriminatory behavior, especially towards office staff, primarily Bauknecht and Phipps.

Irish: Experienced Madison's discriminatory behavior as an older woman and complained to Ms. Hatch about it. She was Brillion's ELL (English Language Learners) coordinator. Madison demeaned her, minimized her position, did not provide her with the supplies she needed like testing materials. As a result, Irish left the position prematurely; she stopped working prior to when she wanted to and, on information and belief, prior to when she was eligible for retirement.

Grodevant (formerly Nigbor), Prozanski, Schindel (formerly Hobbs), & Nistler: Directly witnessed Madison's discriminatory behavior toward Hatch.

Boettecher: Experienced Madison's discriminatory behavior directly, and witnessed Madison's discriminatory behavior of Hatch.

Koerth: Experienced discriminatory behavior of Madison as an older woman. Was essentially fired at age 55, but was able to negotiate early retirement with Ms.

Hatch's assistance, so she did receive her health insurance benefit despite not being entitled to it until age 57.

Dr. Nissan Bar-Lev: Was Ms. Hatch's supervisor for the special education/school psychologist component to her position. Ms. Hatch sought advice from him as to how to deal with Madison's discriminatory behavior. He was also the person who talked with Holt and got Ms. Hatch the job at Neenah by telling Holt that the nonrenewal was not Hatch's fault, but rather Madison's. Holt did hire Hatch at Neenah. Holt had knowledge because of Nissan Bar-Lev, and because Hatch asked to speak with her about the circumstances surrounding her non-renewal before signing her contract with Neenah.

Heimke, Hasbargen, & Kalies: Have direct knowledge of Madison's discriminatory, erratic, and irrational behavior.

Kim Madison: Direct experience of Madison's discriminatory, abusive, erratic and irrational behavior.

Dr. Nancy Vandenput: Has knowledge of Madison's behavior towards Hatch and the physical consequences, both immediate and long term that Madison's behavior has had on Hatch.

**INTERROGATORY NO. 3.** State every fact and identify every document that you contend supports your claim that the School District discriminated against you due to your age.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without

14

waiving any general or specific objections, Plaintiff identifies her contract/salary in comparison to Tiffanie Nigbor and Cathy Prozanski; employment contracts for all District principals, school psychologists, and special education coordinators between 2005 and the present; the email exchange between Madison and Plaintiff regarding the latter's request for time off; any documentation regarding use of the school vehicle between 2006-present, if existing; and any documentation relating to Madison's offer to restructure Prozanski's contract in 2012, if existing. Additionally, please see Plaintiff's Amended Complaint and documents Bates-stamped AH000001-AH000003, AH000035.

**INTERROGATORY NO. 4.** State every fact and identify every document that you contend supports your claim that the School District discriminated against you due to your sex.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without waiving any general or specific objections, Plaintiff identifies her and Paul Nistler's employment contracts; any records regarding use of the school vehicle, if existing; the email exchange between Madison and Plaintiff regarding the latter's request for time off; and employment contracts for all District principals, school psychologists, and special education coordinators between 2005 and the present. Additionally, please see Plaintiff's Amended Complaint and document Bates-stamped AH000035.

**INTERROGATORY NO. 5.** State every fact and identify every document that you contend supports your claim that the School District, including Madison, retaliated against you for complaining about Madison's conduct.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without waiving any general or specific objections, Plaintiff identifies text messages and email communications between Madison and Plaintiff sent in 2011; the 3-year contract offered to Plaintiff in April 2011 that was subsequently rescinded due to state law; Plaintiff's positive evaluations prior to July 2011; Madison's July 2011 evaluation of Plaintiff; and Madison's January 2012 evaluation of Plaintiff. Additionally, please see Plaintiff's Amended Complaint and documents Bates-stamped AH000004-AH000006, AH000025, AH000036-AH000039, AH000064-AH000067 and AH000143-AH000145.

**INTERROGATORY NO. 6.** Identify each and every instance that you informed any School District employee, agent or representative that you believed you were treated differently because of your age or sex or that you were retaliated against for complaining about Madison.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without waiving any general or specific objections, Plaintiff identifies multiple conversations with Tiffanie Nigbor, Cathy Prozanski, and Paul Nistler following meetings with Madison; discussions with Renee Maeder on June 8, 2011 and June 29, 2011;

16

multiple conversations with Deborah Boettcher between 2010 and 2012; conversations with Shannon Hobbs in 2012; multiple conversations with Brian Starzak during Plaintiff's tenure as principal. Additionally, please see Plaintiff's Amended Complaint.

**INTERROGATORY NO. 7.** Identify each and every instance that any School District employee, agent or representative informed you that he/she believed you were treated differently because of your age or sex or that you were retaliated against for complaining about Madison.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without waiving any general or specific objections, Plaintiff responds that the vast majority of the District staff and many parents of District students indicated their beliefs that Plaintiff was being retaliated against due to her complaint about Madison to the school board and/or because of her protected characteristics. The individuals and instances are too numerous to name.

**INTERROGATORY NO. 8.** Identify each and every instance that any School District employee, agent or representative informed you there were complaints, other than yours, about Madison's behavior. For each instance identified, please also identify the person informing you, the time and place of the communication and describe [sic].

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without

17

waiving any general or specific objections, the following School District employees informed Plaintiff that there were complaints, other than hers, about Madison's behavior: Sally White, Coree Wallander, Kerri Shimek, Renee Maeder, Deb Koerth, Cathy Prozanski, Tiffany Nigbor, Deb Boettcher, Karen Broeckert, Brenda Bastian, Margie Bauknecht, Deb Phipps, Cheryl Kittel, Peter Kittel, Steve Meyer, Lucy Hartenbach (formerly Lucy Konop), Dana Irish, Glenda Luebke, Ben Bastian, Donna Haese, Kathy Mielke, Al Wagner, Colleen Hubley-Kedinger, Brian Starzak, Gordy Gasch and Dr. Nissan Bar-Lev.

White: On information and belief, Ms. White filed a complaint with the Wisconsin Department of Workforce Development after being fired from teaching by Madison due to his discriminatory behavior. White indicated a settlement has been reached.

Wallander: Ms. Wallander filed a complaint about not being paid for overtime. Madison fought the complaint, and Wallander prevailed. This complaint was common knowledge to staff at Brillion Public Schools.

Shimek: In the spring of 2011, Ms. Shimek complained to Ms. Hatch as her supervisor about Madison's behavior (to which Ms. Hatch was a witness) and about Madison's treatment of her while in a meeting with Madison and Ms. Hatch. Ms. Hatch asked her if she wanted to file a complaint. She was afraid to do so because of retaliation. She did not file a formal complaint. The meeting took place in Madison's office, however a follow-up discussion a day later initiated by Shimek took place in Ms. Hatch's office.

Maeder: In June of 2011, Maeder commented after a committee meeting regarding Student Learning that she had received numerous complaints about Madison's behavior. This complaint was made in the Board room. Maeder also made a comment about how rudely Madison had just treated her. That was also said in the board room. Maeder subsequently confirmed these statements to Ms. Hatch.

Koerth: From 2005-2006 Ms. Koerth complained about Madison's discriminatory treatment of her on multiple occasions. The conversations took place at Brillion Middle School in various locations.

Prozanski: Between June 2012 and June 2013, Ms. Prozanski made numerous complaints to Ms. Hatch regarding Madison's behavior starting with an inappropriate text in June 2012. In September 2012, Prozanski had a meeting with Horn in which she complained about Madison's behavior. Prozanski left her position after only one year largely due to Madison's behavior.

Grodevant (formerly Nigbor): Throughout her 3-year tenure as principal, Nigbor complained about Madison's behavior to Ms. Hatch on multiple occasions. She defined his behavior as impulsive, abusive and erratic, mostly directed at Ms. Hatch and to some of her own teachers/staff as well. These conversations took place in Nigbor's and Hatch's office(s). At the May 2011 Board of Education meeting, Nigbor said to Ms. Hatch,"Why doesn't the board see Madison for who he really is?" Ms. Hatch responded, "Everyone is afraid to tell them." This conversation took place in the Board room.

Boettcher: Complained about Madison's discriminatory behavior regarding denial of days off and excessive work load in comparison to a much younger female assistant. These complaints were ongoing throughout Ms. Hatch's tenure as principal. Ms. Hatch had to advocate for Boettecher each and every time Boettecher requested time off up until January 2012. Between January 2012 and August 2013, Madison did not challenge each and every request Boettcher made for time off. These conversations took place in the Middle School Office.

Broeckert: On information and belief, Broeckert wrote a letter to the Board of Education regarding Madison's treatment of Ms. Hatch and her impending non-renewal. Madison asked Nissan Bar-Lev to remove Broeckert from her position, but Nissan Bar-Lev would not. Broeckert left her position due to Madison's treatment of Ms. Hatch and herself in August 2012. Conversations about Madison's treatment of Ms. Hatch took place in Hatch's and Broeckert's office(s).

Bastian: Made complaints about Madison's behavior in regards to his treatment of Ms. Hatch and Ms. Prozanski. Those conversations took place in Prozanski's office.

Bauchnecht: Ms. Bauchnecht complained about Madison, typically immediately after an upsetting conversation between Madison and herself. Bauchnecht never went to Ms. Hatch to have these conversations, rather Ms. Hatch would walk into the upsetting situation in the District Office sometime after it happened. Ms. Hatch witnessed Bauchnecht crying after some of Madison's abusive, discriminatory behavior. Other times, Bauchnecht was composed and would

20

indicate that she needed to just let it roll off her shoulders.

Phipps: Phipps made brief complaints to Ms. Hatch regarding Madison's demeaning behavior in the office to her and the other office staff. These conversations took place in her office.

Cheryl Kittel: Ms. Kittel spoke with Ms. Hatch about Madison's behavior at a community dinner where he made the comment about menopausal teachers and pubescent males. This conversation took place in the fall of 2011 in Kittel's classroom the day following the dinner.

Pete Kittel: Mr. Kittel was the athletic director and complained to Ms. Hatch about Madison's behavior toward her as a coach. Ms. Hatch approached Kittel in January 2012 after the golf position was posted. Kittel indicated to Ms. Hatch that she was one of the best coaches they had and that Madison's treatment of her was unfair and not right. Ms. Hatch asked Kittel what he was going to do about it, and he indicated he felt there was nothing he could do - that he had been given a directive and had to follow it.

Meyer: Complained to Ms. Hatch about Madison's offensive and inappropriate behavior, particularly while Madison and Meyer were on trips with representatives of the Alhern Company (company located in Brillion that makes snow blowers; Meyer would go on trips and make presentations to other schools, and Madison would accompany him). Meyer additionally requested a meeting with Horn this school year to discuss a school-related matter. On information and belief, Horn agreed to meet with Meyer, but when Horn discovered that the meeting

21

subject was Madison's behavior, he abruptly ended the meeting. Meyer's communications with Hatch took place in Hatch's office.

Hartenbach (formerly Lucy Konop): Hartenbach complained to Ms. Hatch weekly about Madison's behavior between 2008 and 2013. She found his behavior toward herself and others to be condescending, unfair, rude, and demeaning. Madison tried to end her employment by reassigning her to a less desirable position so that she would retire. Conversations took place in the elementary school principal's office and in Ms. Hatch and Ms. Hartenbach's home. Hatch and Hartenbach spoke at length about the toll Madison's behavior was taking on Hatch. Hartenbach asked Hatch to resign on numerous occasions due to the physical and psychological toll Madison's behavior was taking on her despite the substantial financial loss the couple would suffer as a result.

Luebke: Luebke made complaints to Ms. Hatch regarding Madison's treatment of her paraprofessional, Ms. Osinga. Specifically, Ms. Luebke felt that Madison was making it difficult for Ms. Osinga to request days off to treat her own health issue as well as a separate serious health issue with her mother, which resulted in her mother's death. Luebke saw Madison's behavior as being unreasonable. Osinga eventually left the district due to Madison's treatment of her.

Bastain: Mr. Bastain was Brillion's Police Liaison Officer. He came to Hatch's office in late May, 2012 to tell Hatch that he witnessed something concerning regarding Madison. During a senior class breakfast toward the end of the school year, Ms. Hatch was handing out time capsules that the seniors had made when

22

they entered high school. Mr. Bastain witnessed Madison say to Paul Nistler, "What the hell is she doing here?" and heard Nistler respond by informing Madison that Ms. Hatch was handing out time capsules. Officer Bastain then witnessed Madison angrily leave the area and followed him down the hallway; he witnessed Madison muttering angrily about Ms. Hatch and became concerned for Ms. Hatch's safety. Bastian indicated to Ms. Hatch that she may not be safe and should alert a local law enforcement agency of a possible threat. He also gave Ms. Hatch Madison's license plate number and stated that he would alert the local police department where Hatch lived about his concerns.

Haese: Ms. Haese was a witness to Madison's abusive behavior towards Kim Madison. Haese also experienced discriminatory behavior by Madison. Once Madison realized that Kim Madison was confiding to Haese, Madison tried to fire her, but Nistler, her principal at the time, would not comply. Haese is now working for a different school district. Haese and Hatch have had numerous discussions about Madison's behavior in person while at work, in Hease's home, and on the telephone.

Mielke: Ms. Mielke's complaints took place following meetings in regards to Madison's behavior after being asked curriculum questions. Mielke's complaints to Ms. Hatch were during the 2010-11 school year and took place in the classroom with children present.

Wagner: Wagner indicated to Ms. Hatch in May of 2012 during a middle school track meet that Madison's behavior towards Sally White was abusive and

entirely inappropriate. He also indicated to Ms. Hatch that he did not understand how Madison could treat women the way he did and still have a job.

Hubley-Kedinger: Hubley discussed filing a formal complaint against Madison due to his discriminatory treatment of her. This was pre-2011. The discussion took place in Hubley's office.

Starzak: On numerous occasions, Starzak complained to Ms. Hatch about Madison's abusive treatment to Madison's office staff (Bauknecht, Phipps and Lemke) and Kim Madison. These complaints took place at various locations on school grounds.

Gasch: Gasch as a teacher complained about Madison's behavior and Madison's incompetency's as an administrator. These discussions took place in Ms. Hatch's office.

Bar-Lev: Complained to Hatch about Madison's treatment of her. At one point Ms. Hatch discussed with Bar-Lev resigning due to Madison's behavior towards her. He told her to hang in there and said, "You can't leave Brillion, you are Brillion." He also indicated that he thought Madison would not stay forever and that everyone else in Brillion just needed to ride things out for just a bit longer. These conversations took place in Ms. Hatch's office and in Bar-Lev's office. These conversations began in 2009 and continued until 2011. Bar-Lev spoke with Madison shortly after the July 11, 2011 evaluation. After that conversation, Bar-Lev told Ms. Hatch it would be best if she left Brillion.

**INTERROGATORY NO. 9.** Identify each and every instance that any School District employee, agent or representative informed you that they disapproved of Madison's behavior towards or treatment of you.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without waiving any general or specific objections, the following School District employees informed Plaintiff that they disapproved of Madison's behavior towards or treatment of her: Cathy Prozanski, Tiffany Nigbor, Paul Nistler, Shannon Hobbs, Dana Irish, Renee Maeder, Deb Boettcher, Ben Bastian, Donna Haese, Peter Kittel, Glenda Luebke, Brian Starzak, Amy Brey, Lucy Hartenbach (formerly Lucy Konop) and Dr. Nissan Bar-Lev.

**INTERROGATORY NO. 10.** Identify each witness (lay or expert) you expect to testify at hearing or who may otherwise provide testimony on your behalf (whether by deposition, affidavit or otherwise).

**RESPONSE:** Please see Plaintiff's Amended Rule 26(a) Initial Disclosures dated November 2, 2016 and refer to 26(f) report and Plaintiff's expert witness disclosure and written report dated March 1, 2017. Additionally, Plaintiff identifies Shannon Schindel (Hobbs), and Deborah Boettcher.

**INTERROGATORY NO. 11.** Identify each exhibit, item, material, document or thing you intend to introduce into evidence as an exhibit at the hearing in this lawsuit.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without waiving any general or specific objections, please see documents Bates-stamped AH000001-AH000237.

**INTERROGATORY NO. 12.** Identify and describe all damages you are claiming in this matter, including a total amount and an itemization of all parts or categories thereof.

**RESPONSE:** Please see, Plaintiff's Fed. R. Civ. P. 26(a)(1)(A)(iii) disclosures, as amended, served on counsel for Defendant November 2, 2016.

**INTERROGATORY NO. 13.** Other than this lawsuit, identify each and every lawsuit, claim, case, EEOC charge, ERD claim or other legal proceeding to which you have been a party, and for each provide; (a) the caption of the lawsuit, claim, case or other legal proceeding; and (b) the disposition of said lawsuit, claim, case or other legal proceeding.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any general or specific objections, other that the instant action and the corresponding Equal Rights Division case(s), Plaintiff has not been a party to any other lawsuits, claims, cases or legal proceedings.

**INTERROGATORY NO. 14.** Identify each and every job you have held since June 30, 2013. For each job identified, provide: (a) the employer's name and

address; (b) the title of the job; (c) your date of hire; (d) your salary or rate of pay; (e) the date of termination or resignation, if any; and (f) the reason for your termination or resignation.

RESPONSE: Plaintiff responds as follows:

a.      Neenah Joint School District,
         410 South Commercial Avenue
         Neenah, WI 54956;

b.      School Psychologist;

c.      August 27, 2012;

d.      $74,475.26 (2016-2017);

e.      Not applicable; and

f.      Not applicable.

**INTERROGATORY NO. 15.** Identify each and every job you have applied for since June 30, 2013. For each job identified, provide: (a) the employer's name and address; (b) the title of the job(s) applied for; (c) the staring salary or pay rate; and (d) the status of the application as of today's date.

RESPONSE: Plaintiff has not applied for any jobs since June 30, 2013.

**INTERROGATORY NO. 16.** Identify each and every act or omission by the School District that you contend demonstrates that the School District discriminated against you on the basis of your age or sex or in retaliation for your alleged protected activity.

RESPONSE: Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving any general

or specific objections, please see Plaintiff's Amended Complaint paragraphs 19-21, 24-31, 38-48, 51-57, 59-73 and 75-77.

**INTERROGATORY NO. 17.** Identify each and every comment made by any employee, agent or representative of the School District regarding your age or sex.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving any general or specific objections, please see Plaintiff's Amended Complaint paragraphs 20, 21, 25, 26, 40, 48, 51, 53, 56, 60, 69, and 71; also see the above answers to Interrogatory numbers 2 and 8.

**INTERROGATORY NO. 18.** State every fact and identify every document that you contend supports your claim that you were paid less than other administrators because of your sex or gender.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving any general or specific objections, Plaintiff identifies the employment contracts of all elementary, middle, and high school principals from 2005-2013. Additionally, please see Documents Bates Stamped AH000001-AH000003.

**INTERROGATORY NO. 19.** State every fact and identify every document that you contend supports your claim that you were subjected to more burdensome performance goals in 2011 and 2012 than other principals in the School District.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving any general

Case 1:16-cv-00802-WCG   Filed 11/15/17   Page 28 of 35   Document 34-1

or specific objections, Plaintiff identifies the annual goal setting documentation and all evaluations of all elementary, middle, and high school principals from 2011-2012. Plaintiff further alleges the fact that she was the only administrator subject to a mid-year evaluation in July 2011, the only time in all her years working for the District. Additionally, please see Plaintiff's Amended Complaint paragraphs 46-48 and 60-62.

**INTERROGATORY NO. 20.** State every fact and identify every document that you contend supports your claim that the School District did not renew your contract because of your sex or gender or in retaliation for your complaint about Madison.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving any general or specific objections, please see Plaintiff's Amended Complaint paragraphs 40-52 and 56-76.

**INTERROGATORY NO. 21.** Identify each and every comment made by any School Board member who allegedly told you Madison was trying to fire you.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving any general or specific objections, Renee Maeder indicated to Plaintiff that she was aware that Madison was going to fire her in early January 2012. This marked a change from mid-late July 2011, at which time Maeder told Plaintiff that Madison was just angry and everything would "blow over."

29

**INTERROGATORY NO. 22.** State every fact and identify every document that you contend supports your claim that you had twenty-four (24) years of administrative experience with the School District.

**RESPONSE:** Plaintiff worked continuously for the Brillion School District from August 1987 until August 2012. She was hired as a school psychologist and special education coordinator, and been on the administrative team with an administrative contract her entire tenure at Brillion. She was never on a teacher contract or a member of the union.

**INTERROGATORY NO. 23.** State every fact and identify every document that you contend supports your claim that you suffered severe emotional distress and anxiety due to Madison's treatment of you.

**RESPONSE:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving any general or specific objections, Plaintiff identifies the incident in March 2012 when Madison yelled at her in her office; her many successful years coaching the golf team and Madison's abrupt termination of Plaintiff's coaching duties for the first season following her complaint to the board; loss of sleep; acute nervousness resulting in Plaintiff having to stop on her drive to work to use the bathroom; high blood pressure; and teeth-grinding resulting from stress and anxiety.

### REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1.** Produce all documents identified in your answers to, or that are otherwise related to the subjects of, the preceding

30

Requests for Admission and Interrogatories. Please indicate in your production to which Request for Admission or Interrogatory each document relates.

RESPONSE: Please see Plaintiff's responses to Requests for Admissions and Interrogatories above.

REQUEST FOR PRODUCTION NO. 2. Produce all documents that in any way relate to your claims in the lawsuit.

RESPONSE: Plaintiff objects to this Request on the grounds that it is overly broad, and unduly burdensome. Subject to and without waiving any general or specific objections, please see documents Bates-stamped AH000001-AH000237.

REQUEST FOR PRODUCTION NO. 3. Produce every opinion, report, data, calculation, exhibit or other information, document or thing, prepared, considered, relied on or produced by an expert whose testimony you intend to introduce at the hearing in this lawsuit.

RESPONSE: Please see Plaintiff's expert witness disclosure and written report produced on March 1, 2017.

REQUEST FOR PRODUCTION NO. 4. Produce the resume of any expert whose testimony you intend to introduce at the hearing in this lawsuit, including a list of any other cases in which the expert has testified at trial, hearing or by deposition.

RESPONSE: Please see Plaintiff's expert witness disclosure and written report produced on March 1, 2017.

31

**REQUEST FOR PRODUCTION NO. 5.** Produce all documents that evidence, reflect or relate to the damages you are seeking in this lawsuit, including, without limitation, an itemization of damages.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overly broad, and unduly burdensome. Subject to and without waiving any general or specific objections, please see documents Bates-stamped AH000001-AH000003 and AH000007-AH000019.

**REQUEST FOR PRODUCTION NO. 6.** Produce all documents, including medical records, that evidence, reflect or relate to your claim that you suffered severe emotional distress and anxiety as a result of Madison's treatment of you.

**RESPONSE:** Plaintiff is unable to produce documents responsive to this request at this time. Plaintiff is collecting documents responsive to this request from her medical providers and will provide them as soon as they are obtained.

**REQUEST FOR PRODUCTION NO. 7.** Produce all documents that you contend support your claim that the School District discriminated against you due to your age or sex.

**RESPONSE:** Please see documents Bates-stamped AH000001-AH000237.

**REQUEST FOR PRODUCTION NO. 8.** Produce all documents that you contend support your claim that the School District made you perform more burdensome tasks due to your age and sex.

**RESPONSE:** Please see documents Bates-stamped AH000106-AH000118.

**REQUEST FOR PRODUCTION NO. 9.** Produce all documents that you contend support your claim that the School District paid you less than other administrators due to your age and sex.

**RESPONSE:** Please see documents Bates-stamped AH00001-AH00006. On information and belief, other documents in Defendant's control that will be requested through discovery are responsive to this request.

**REQUEST FOR PRODUCTION NO. 10.** Produce all documents that you contend support your claim that the School District retaliated against you due to your complaint about Madison's conduct.

**RESPONSE:** Please see documents Bates-stamped AH000001-AH000237.

**REQUEST FOR PRODUCTION NO. 11.** Produce any documents reflecting or evidencing any income you have received from any source (including without limitation, employment, unemployment, and/or social security or other disability benefits) since June 30, 2013.

**RESPONSE:** Please see documents Bates-stamped AH000007-AH000019 and AH000193-AH000237.

**REQUEST FOR PRODUCTION NO. 12.** Produce any documents that constitute, reflect or in any way relate to communications you had with the School District between August 2008 and the present date.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and involves information already in Defendant's possession. Without waiving any general or specific objections, please see

documents Bates-stamped AH000022-AH000023, AH000026, AH000035, AH000072, AH000098, AH000108-AH000018, AH000131, AH000137, AH000139, AH000150-AH000153, AH000158 and AH000162-AH000164.

**REQUEST FOR PRODUCTION NO. 13.** Produce any documents that constitute, reflect or in any way relate to communications you had with any third-party between August 2008 and the present date regarding the allegations contained in the Complaint.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and involves information already in Defendant's possession. Without waiving any general or specific objections, please see documents Bates-stamped AH000150-AH000151 and AH000161.

**REQUEST FOR PRODUCTION NO. 14.** Produce copies of any and all statements taken from any parties or witnesses who have knowledge, or claim to have knowledge, of the facts or circumstances involved in the lawsuit.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overly broad and unduly burdensome. Discovery is ongoing. Subject to and without waiving any general or specific objections, Plaintiff is unable to produce documents responsive to this request at this time.

AS TO SUPPLEMENTAL ANSWERS TO INTERROGATORIES, OBJECTIONS, AND REQUESTS FOR PRODUCTION OF DOCUMENTS

**HAWKS QUINDEL, S.C.**
*Attorneys for the Plaintiff, Ann E. Hatch*

By: _____
Nicholas E. Fairweather, State Bar No. 1036681
E-mail: nfairweather@hq-law.com
Michael R. Godbe, State Bar No. 1104823
E-mail: mgodbe@hq-law.com
409 East Main Street
Madison, Wisconsin 53703
Telephone: (608) 257-0040
Fax: (608) 256-0236