STATE OF WISCONSIN
DEPARTMENT OF WORKFORCE DEVELOPMENT
EQUAL RIGHTS DIVISION

ANN HATCH,

        Complainant,

          v.

ERD Case No. CR201201671
EEOC Case No. 26G201201096C

SCHOOL DISTRICT OF BRILLION,

        Respondent.

## COMPLAINANT'S RESPONSES TO RESPONDENT'S
## FIRST SET OF REQUESTS FOR ADMISSION

To:    School District of Brillion
       c/o Attorney John A. Haase
       Godfrey& Kahn, S.C.
       200 South Washington Street, Suite 100
       Green Bay, WI 54301-4298

    1.    Complainant objects to the extent that the interrogatories and requests for documents seek disclosure of anything within the scope of the attorney-client privilege, work product doctrine, or any other privilege or limitation on discovery recognized by law. In the event any privileged information is disclosed by Complainant in connection with these responses, such disclosure is inadvertent, unknowing, and does not constitute a waiver of such privilege.

    2.    Complainant objects to the extent that these interrogatories and requests for documents seek information or documents that are irrelevant or not reasonably calculated to lead to the discovery of admissible evidence.

**EXHIBIT**

**F**

3.      Complainant objects to the extent that these interrogatories and requests for documents are overly broad, unduly burdensome, or appear to be proffered merely for the purpose of annoyance, harassment or to cause undue burden and expense.

4.      Complainant objects to any conditions, instructions, statements, terms, definitions, or requirements contained in Respondent's discovery that seek to modify the obligations set forth by the State of Wisconsin. All such conditions, instructions, statements, terms, definitions, or requirements are not accepted and have been disregarded.

5.      Complainant's responses contained herein are based upon the information available to Complainant as of the date these responses are signed by counsel. Complainant has not fully completed her preparation for trial; therefore, Complainant reserves the right to supplement or amend these responses to the full extent allowed by law.

6.      Complainant objects to the use of "all," "every," "each," "any," and similar terms as overly broad and unduly burdensome. Complainant will make a reasonable search of the information and documents available to her for responsive, non-privileged information and documents.

7.      Complainant objects to the extent that any interrogatories or requests for documents require knowledge that Complainant does not possess.

8.      The above-stated objections are general and continuing in nature. They are incorporated into each response below, as if fully stated therein. The general

2

and continuing objections shall be construed alongside and in addition to any specific objections stated below.

Subject to the forgoing General and Continuing Objections, and without waiver of same, Complainant responds to Respondent's First Set of Requests for Admission as follows:

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.** Admit that you began your employment with the School District in 1987 as a School Psychologist and Special Education Coordinator.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 2.** Admit that during your employment you were aware of the School District's Harassment and Complaint Policies.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 3.** Admit that the document attached hereto as **Exhibit A** is a true and correct copy of the School District's Harassment and Complaint Policies.

**RESPONSE:** Complainant admits that Exhibit A is a copy of the School District's Harassment and Complaint Policies but states that the Policies were amended and/or changed after June of 2011.

**REQUEST FOR ADMISSION NO. 4.** Admit that you were hired by the School District as a Middle School Principal in 2006.

3

RESPONSE: Complainant admits that she was hired by the School District as a Middle School Principal in 2006 but states that she also remained the School District's School Psychologist and Special Education Coordinator.

REQUEST FOR ADMISSION NO. 5. Admit that you were 46 years old when you began employment with the School District as a Middle School Principal.

RESPONSE: Deny.

REQUEST FOR ADMISSION NO. 6. Admit that your base salary for the 2011-2012 school year was $84,693.19.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 7. Admit that the document attached hereto as **Exhibit B** is a true and correct copy of your Contract for Employment as School Psychologist/Middle School Principal.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 8. Admit that pursuant to your Contract for Employment, administrators were required to have a written performance evaluation at least one time per year.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 9. Admit that in connection with your performance review, which was provided to you on January 13, 2011, you and Madison discussed your goals for 2011.

RESPONSE: Admit.

4

REQUEST FOR ADMISSION NO. 10. Admit your goals for 2011 included to "develop practices and programs that promote diminishing separate buildings and subject matter" and to "work with the elementary principal to have RtI implemented in grades 1-8."

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 11. Admit that the document attached hereto as **Exhibit C** is a true and correct copy of your Administration Evaluation Mid-Year Review, dated July 11, 2011.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 12. Admit that your Administration Evaluation Mid-Year Review also contained your goals for 2011.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 13. Admit that your Administration Evaluation Mid-Year Review provided you with notice that you needed to improve your performance.

RESPONSE: Admit.

REQUEST FOR ADMISSION NO. 14. Admit that Madison met with you to discuss your Administration Evaluation Mid-Year Review.

RESPONSE: Complainant admits that Madison met with her to discuss her Administration Evaluation Mid-Year Review; however Complainant states the meeting was not a "discussion" and rather that Madison began the meeting by accusing her of complaining to the Board about his behavior and then told her that

5

she would never coach in the district again.  He then explained the need for a mid-year review and read the evaluation to her.  Complainant attempted to respond and Madison told her to, "shut-up."  Complainant told Madison she thought that the review was for her benefit, at which point he allowed her to speak, only to cut her off once she began.  He then told her that if she spoke again he would consider it insubordination.  Complainant did not speak again during this meeting.

**REQUEST FOR ADMISSION NO. 15.**  Admit that by the end of 2011, you did not meet two of your three goals for the year.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 16.**  Admit that the document attached hereto as **Exhibit D** is a true and correct copy of your Administration Evaluation, dated January 26, 2012.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 17.**  Admit that your Administration Evaluation contained your goals for 2012.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 18.**  Admit that your 2012 goals were the same as your 2011 goals.

**RESPONSE:**  Deny. Complainant states that she attended her evaluation with different goals for 2012; however, Madison insisted that her 2012 goals remain the same as her 2011 goals.

6

**REQUEST FOR ADMISSION NO. 19.** Admit that the document attached hereto as **Exhibit E** is a true and correct copy of your 2011 self-assessment.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 20.** Admit that in your 2011 self-assessment you proposed going back to serving only as the School District's Special Education Coordinator and School Psychologist.

**RESPONSE:** Complainant admits that in her 2011 self-assessment she proposed returning to serving only as the School District's Special Education Coordinator and School Psychologist to continue to meet goal #1. Complainant felt that the administrative structure was the greatest barrier to a K-8 concept (k-5 principal and 6-8 principal).

**REQUEST FOR ADMISSION NO. 21.** Admit that in your 2011 self-assessment you proposed combining the elementary and middle schools and having a principal/co-principal model.

**RESPONSE:** Complainant admits that in her 2011 self-assessment she proposed combining the elementary and middle schools and having a principal/co-principal model to continue to meet goal #1. Complainant felt that the administrative structure was the greatest barrier to a K-8 concept

**REQUEST FOR ADMISSION NO. 22.** Admit that you reported receiving an inappropriate email from Madison to the School District on June 29, 2011.

**RESPONSE:** Admit.

7

**REQUEST FOR ADMISSION NO. 23.** Admit that after you reported Madison's email to the School District, the School Board President, Brian Horn, called you to apologize and advised he would look into the matter.

RESPONSE: Admit.

**REQUEST FOR ADMISSION NO. 24.** Admit that the document attached hereto as **Exhibit F** is a true and correct copy of Madison's July 18, 2011 written apology to you for his inappropriate email.

RESPONSE: Admit.

**REQUEST FOR ADMISSION NO. 25.** Admit that the document attached hereto as **Exhibit G** is a true and correct copy of the School Board's Memorandum, dated September 21, 2011.

RESPONSE: Admit.

**REQUEST FOR ADMISSION NO. 26.** Admit that you received a copy of the School Board's Memorandum on or about September 21, 2011.

RESPONSE: Admit.

**REQUEST FOR ADMISSION NO. 27.** Admit that you refused to cooperate and work with Madison to meet your goals for 2011 and 2012.

RESPONSE: Deny.

**REQUEST FOR ADMISSION NO. 28.** Admit that Madison did not make any comments to you about your gender or age during your employment as Middle School Principal.

RESPONSE: Deny.

8

**REQUEST FOR ADMISSION NO. 29.** Admit that you never advised the School District that you were required to work more hours than other administrators.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 30.** Admit that the document attached hereto as **Exhibit H** is a true and correct copy of the School District's Statement of Reasons for Non-Renewal of your contract.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 31.** Admit that you were provided with a copy of the School District's Statement of Reasons for Non-Renewal on or about June 11, 2012.

**RESPONSE:** Admit.

Dated this 25th day of January, 2016.

HAWKS QUINDEL, S.C.
*Attorneys for Complainant, Ann Hatch*

By: _____
Nicholas E. Fairweather, State Bar No. 1036681
Email: nfairweather@hq-law.com
222 West Washington Avenue, Suite 450
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608-257-0040
Facsimile: 608-256-2036

9

BRILLION PUBLIC SCHOOLS
BOARD OF EDUCATION
SERIES 500: PERSONNEL

FILE: 512

Harassment - Personnel

The school district of Brillion does not tolerate harassment in any form and will take all necessary and appropriate action to eliminate it, up to and including discipline of the offenders. It is the policy of the district to maintain and insure a learning environment and working conditions free of any form of harassment or intimidation towards and between students or its employees. **This policy prohibits such harassment by any employee, student, parent, or other third party against the District's employees.**

Harassment is behavior based in whole or in part, on sex, race, age, national origin, ancestry, creed, color, religion, creed, pregnancy, marital status, sexual orientation, disability/handicap, political affiliation, citizenship or other protected status which substantially interferes with a person's work performance or creates an intimidating, hostile or offensive work environment and is considered a form of discrimination according to state and/or federal law.

Sexual harassment can be by a person, of the same or opposite gender, and is defined as any deliberate, repeated or unwanted physical sexual contact, sexually explicit derogatory statement, or sexually discriminatory remark which is offensive or objectionable to the recipient or which causes the recipient discomfort or humiliation or which interferes with the recipient's work performance. Sexual harassment can take the form of, but is not limited to any unwanted sexual- or gender-related behavior ranging from leering, pinching, patting, offensive jokes, unwanted flirtations, graphic commentaries about a person's body, verbal comments, display of graphic or written sexual material, overt or implicit threats or bribes and subtle or express pressure for sexual activity.

This policy recognizes that harassment occurring via electronic communication mediums is expressly prohibited under this policy. This form of harassment is not limited to activity done on school property or school computers.

Employees who believe they have been subjected to harassment should report the incident(s) to the building principal/designee. If the alleged harasser is the person to whom the complaint would normally be made, the complaint should be made to the next higher administrative authority in the complaint procedure. **Complaints regarding the District Administrator should be referred to the Board President, and complaints against a member of the Board of Education should be made to the District Administrator. The Board President or District Administrator is authorized to retain an impartial third-party investigator.**

The employee receiving the complaint shall report the complaint to the principal or other administrator. The designated harassment officer shall be informed of any complaints.

Third party witnesses are strongly encouraged to report observed incidents of harassment to the administration.



**EXHIBIT**

A

The right to confidentiality, of both the complainant and of the accused, will be respected consistent with legal obligations.

Retaliation against anyone reporting, or thought to have reported or cooperating in an investigation of, after reported, harassment behaviors is prohibited. Such retaliation shall be considered a serious violation of the policy and shall be independent of whether a charge or informal complaint of harassment is substantiated. Encouraging others to retaliate also violates the policy.

The administration and staff will inform students and staff that the Brillion Public School District does not tolerate harassment in any form and will take all necessary and appropriate action to eliminate it, up to and including discipline of offenders and policy violators. Staff will be informed of this policy annually and complaint procedures will be made available to any employee wishing to file a complaint.

Legal Ref.: Sections 111.31, 111.32(13), 111.36(1)(b), 118.195, 118.20, 947.013,.940.225, 111.32 (5)(g) 4, and 947.025 of the Wisconsin Statutes.
SEC 703, Title VII, Civil Rights Act of 1964
Wisconsin Statute
Title IX Federal Law

CROSS REF.: 511, Equal Opportunity Employment; 522.4, Acceptable Use of Technology by Staff; and, Current Employee Agreements.

First Reading: ~~7/20/09~~ 08/15/2011
Second Reading: ~~8/17/09~~ 09/19/2011

**BRILLION PUBLIC SCHOOLS**
**POLICY 512**
**ADMINISTRATIVE RULES**

Complaint Procedure - Harassment

Persons who feel they have been harassed or intimidated <u>based on any of the classifications protected by law as described in Policy 512</u> should take the following steps:

1. Inform the individual that his/her behavior is unwanted, offensive or inappropriate. Do not assume the problem will go away.

2. Notify the building principal/designee right away. If the alleged harasser is the person to whom the complaint would normally be made, the complaint should be made to the next higher administrative authority in the complaint procedure. Early reporting assists any investigation.

3. Request a copy of the district's harassment policy, complaint procedures and reporting form from the district office so that reporting procedures are clear. Fill out Form "A"--Harassment Documentation Form and return to the person you reported to.

4. Keep notes. Make a record of dates, times, places, witnesses and descriptions of each incident. Save all notes or records in a safe place.

Once a report has been filed with the building principal/designee, a confidential and expeditious investigation shall begin following the procedures as outlined on Form "B" Investigation Checklist. <u>The investigator shall determine if it is necessary to take immediate action to protect the alleged victim or others after consulting with the District Administrator, or if the complaint is against the District Administrator, after consulting with the Board President.</u>

1. After receiving a report, the building principal/designee shall conduct an investigation and make a written recommendation to the district administrator within 30 days <u>or as soon as practicable to conduct a complete investigation of the complaint.</u>

2. Upon receipt of a recommendation from the investigating administrator that cause exists to credit the allegations of harassment, the district administrator or board designee may take action based on the report or may conduct a separate investigation. Such investigation must be completed within 30 days of receipt by the district administrator from the investigating administrator. ~~Pending the investigation, the district administrator or board designee may take action to protect the alleged victim.~~

3. If the complaint is not resolved in Step 2, the complainant may file the complaint in writing with the Board of Education. The Board shall consider the complaint at its next scheduled meeting at which time the complainant shall have the right to present his/her position to the Board. After the meeting, the Board shall advise the complainant in writing of the action taken with regard to the complaint.

4. If the complainant is not satisfied with the Board's decision, or in lieu of utilizing these complaint procedures, the complainant may pursue alternate actions available under state or federal laws (e.g. appeal to State Superintendent of Public Instruction (for teachers), filing of complaint with the Equal Rights Division of the Department of Workforce Development, the U.S. Office for Civil Rights - Region V and/or the courts having proper jurisdiction).

**Any complaint filed directly with the District Administrator shall be initially investigated at Step 2. Any complaint filed initially with the Board President (in the case of complaints against the District Administrator) shall be initially investigated by the Board President or his or her designee other than the District Administrator or subordinate employee. A complaint against the District Administrator may be appealed by the complainant after initial investigation to the full Board of Education as described in Step 3.**

A substantiated charge against an employee of the district shall subject that employee to disciplinary action in accordance with any employee contract, up to and including discharge. A substantiated charge against a student shall subject that student to disciplinary action including suspension or expulsion consistent with the district's student discipline policy. **A substantiated charge against a third party, such as a parent or vendor, shall be referred to the District Administrator for determination of appropriate remedial measures. The District Administrator may consult with the Board of Education in the event remedial action is necessary.**

Reviewed: 7/20/09  **08/15/2011**

# BRILLION PUBLIC SCHOOLS
## CONTRACT OF EMPLOYMENT

### SCHOOL PSYCHOLOGIST/MIDDLE SCHOOL PRINCIPAL

It is hereby agreed by and between the Board of Education of the Brillion Public Schools and **Ann Hatch** that the Board does hereby employ the administrator in the position of **School Psychologist, Special Education Coordinator, and Middle School Principal.** The above-mentioned employee agrees to perform such duties as are appropriate to the position as determined by the Board of Education and the District Administrator and to assist in the administration of the school activities and functions as circumstances may determine.

This contract shall cover a period beginning on **July 1, 2011** and ending on **June 30, 2013** for 215 contract days. The calendar of days to work will be assigned to the administrator by the District Administrator. It is agreed the administrator will furnish throughout the life of this contract a valid and appropriate certificate to serve as **School Psychologist/Middle School Principal** in the State of Wisconsin as directed by the Board of Education and that she hereby agrees to devote time, skill, labor and attention to said employment during the term of this contract.

It is mutually understood that any and all laws of the State of Wisconsin pertaining to the contractual relations and obligations impinging on the Board of Education and the above-mentioned employee are a part of this contract.

### SALARY

In consideration for the services rendered, the Board will pay the administrator a salary of **$84,693.19** in accordance with the appropriate salary policies adopted by the Board. The annual salaries for the next year of employment shall be the amounts, whether presently existing or hereafter adopted by the Board, determined under the salary policies of the Board with respect to this position. The salary shall be paid in equal installments less deductions required by federal and state law or authorized deductions.

### INDIRECT COMPENSATION

a.   The administrator shall be entitled to 13 sick leave days annually, cumulative to a total of 100 days.

b.   Authorized use of the administrator's personal car in the administrator's work shall be reimbursed at the rate established by the Internal Revenue Service.

c.   Effective July 1, 2011 and thereafter you shall be required to make full payment towards the employee required contribution to the WRS.



EXHIBIT
*B*

d.  The Board shall pay 100% of the premium for health insurance during the 2011-2012 fiscal year. The Board shall pay 87.4% of the premium for health insurance during the 2012-2013 fiscal year.

e.  The Board shall pay 100% of the premium for dental insurance as provided for other professional employees of the district.

f.  The Board shall pay 100% of the premium for a life insurance policy as provided for other professional employees of the district.

g.  The board shall pay 100% of the premium for a long-term disability insurance policy as provided for other professional employees of the district.

h.  The Board shall reimburse the administrator up to a maximum of one (3) three-credit course per year towards college credits.

i.  The Board shall pay state professional association dues for the administrator.

## TERMINATION BY MUTUAL CONSENT

Upon mutual written agreement by the Board and the administrator, this contract and the employment of the administrator may be terminated without penalty or prejudice against either the Board or the administrator. In this event, the Board shall pay the administrator all remuneration and benefits accrued but unpaid during the period of employment immediately prior to such termination.

## LIQUIDATED DAMAGES

It is further agreed by the parties hereto, in the event said administrator breaches this contract by termination of services during the term of this contract after May 1st and before December 31st, a penalty of one (1) per cent of the annual wages will be assessed.

## EVALUATIONS

The Board shall provide the administrator with a written evaluation at least once each year.

## CONTRACT RENEWAL/NONRENEWAL

Renewal and nonrenewal of this contract shall be governed by sec. 118.24, Wisconsin Statutes.

## RETIREMENT

If an administrator chooses to retire between the ages of 55 and 65, the Board will pay the health benefit at the rate when they retire. The rate is determined as of the year of retirement. Any increase in the rate during the retirement years would be paid by the retiree. The benefit shall continue until the retiree becomes eligible for Medicare or reaches 65; whichever comes first.

## INVALID PROVISIONS

If any article or part of this contract is held to be invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any part should be restrained by any tribunal, the remainder of the contract shall not be affected thereby.

Dated this _19_ day of _September_ 2011.

_____
Signature

_N 179 Von Hondel Dr._
Address
_Appleton, WI 54915_

_____
President, Board of Education

_____
Treasurer, Board of Education

_____
Clerk, Board of Education

Brillion Public Schools
Administrative Evaluation
Mid year Review

Date: July 11, 2011
Administrator: Ann Hatch
Supervisor: Dominick Madison

Summative Narrative
Mid year reviews have not been the norm for administrators in Brillion. However, a need for a
mid-year review of Ms. Hatch has arisen to ensure that expectations are clear regarding her level
of performance. Several incidents in the past six months have made a cause for concern
regarding her performance. It is my wish that these issues can be resolved prior to her end of the
calendar year review with the board of education.

<u>2011 Goals</u>

**Goal #1: To develop practices and programs that promote diminishing separate buildings
and subject manner.**
Evidence may include the following:

- Literacy Block established in the middle school
- Multi-age and/or looped classrooms planned for
- Adjustments made to the 8 period day schedule
- Subject specialties done collaboratively
- Team teaching of subjects with or between both specialists and classrooms teachers

Review

Progress on this goal has been a major concern. Ms. Hatch has not only done very little to
diminish the separation and she has been resistive to changes that have been developed by others
in the district that could help her in achieving this goal. To date:

Ms. Hatch led the way to ending the looping that had occurred in grades 5-6

Ms. Hatch has not shown any leadership in implementing the 5-6 multi-age including

- not visiting a school with grade 5-6 multi-age
- not effectively utilizing existing multi-age teachers to understand the MAC
  concept
- telling parents that the superintendent determined if students would be removed
  from a multi-age when that duty and responsibility has always been the principals
  role at every grade level

EXHIBIT

C

- inferring that the superintendent knew about a meeting for the multi-age when it was communicated to him the day before when he was going to be out of town

**Goal #2: To work with the elementary principal to have RtI implemented in grades 1-8**
Evidence may include the following:

- Every teacher able to implement Tier 2 and Tier 3 interventions
- Special Education teachers assigned as intervention coaches to assist in intervention application
- LD referrals should be significantly diminished

Review

This goal will be assessed in December 2011. However, progress on Middle School teachers as intervention coaches has been minimal.

**Goal #3: Completion of assessment procedures in the middle school.**

By the end of the 2011, a majority of courses should have clear assessments linked to power standards in grades 6-12.

Review

This goal will be further assessed in December 2011.


**Additional items**
To ensure Ms. Hatch is able to better concentrate on her role as an educational leader. Two tasks will be taken off her plate.

First, Ms. Hatch has been charged with implementing changes in the middle school regarding Language Arts Instruction. She has demonstrated difficulty in leading the implementation of an action plan in this area. It is for that reason that she will not longer be charged with Language Arts curriculum and that task will instead be taken up by other administrators.

Second, It has also become apparent that Ms. Hatch needs more time to focus on student learning in her building. The district has experimented with having a middle school principal coach high school golf. This experiment has proven to be unfeasible as it has taken away from Ms. Hatch's focus on her administrative duties. This combination of duties of principal and golf coach will no longer be assigned.

Summative
During the course of the first six months of this calendar year review cycle, Ms. Hatch has demonstrated inadequate progress toward the goals set out for her. She has had several avenues

to achieving her goals presented to her and she has not responded positively to these opportunities. Ms. Hatch needs to take the next six month and refocus on her goals. Effort needs to be made to develop systematic approaches to address student learning issues in her building including means to promote collaboration toward student learning, breaking down of barriers between subjects and grade levels, more teamwork between regular and special education, and clear means of leading how to identify learning goals and measures of those goals.

_L. E. Hatl_ 7·12·2011    _Dil Millins_ 7/11/2011

Ann Hatch    Date                          Dominick Madison    Date
(Signature indicates the review has been received
and does not necessarily mean agreement with the review)

This review was discussed and reviewed on the morning of July 11, 2011. During the course of the meeting Ms. Hatch was also asked if she had any other issues that needed discussion or attention. She said that her only concerns were:

1. To have her working hours better defined, including what to do when inclement weather called for cancellation of school.

2. That she had worked hard to implement the Mac and had a strong desire to see it implemented for all 5-6 grades eventually. She would like to be supported in that implementation and to have a timeline for that purpose.

3. When asked what other support she needed, she said she would have to see how it goes.

She had no other concerns.

Brillion Public Schools
Administrative Evaluation

Date: January 26th, 2012
Administrator: Ann Hatch
Supervisor: Dominick Madison

## Summative Evaluation

Ms. Hatch has not met several important goals as spelled out for her over the last year. While effort was made to try and give her direction at mid-year, she did not take the direction as a means for growth and has not followed the recommendations provided her for what is expected of her in the district. In addition, Ms Hatch has not shown an authentic ability to self reflect on goal achievement. For the second year, Ms. Hatch did not reflect on her goal achievement in a manner that was authentic or accurate. She has not shown evidence that she is able critically assess her own performance.

Ms. Hatch has made repeated suggestions that her current position be reassigned and restructured. It is worthwhile to consider her suggestions as evidence that she is not successful in her current position. The evidence is clear that Ms. Hatch has not been successful as an innovative, educational leader in her current position.

## 2011 Goals

**Goal #1: To develop practices and programs that promote diminishing separate buildings and subject manner.**

Evaluation
Ms. Hatch has implemented a literacy block in only one of three grades in the middle school. The goal of having school-wide literacy blocks has not been met.

Effort has been made in implementing a multi-age classroom, however Ms. Hatch has not internalized this goal and has made it clear to parents and staff that the implementation of the multi-age was not something she wanted to do, but was a goal imposed on her by the superintendent and the board. The multi-age classroom has not been smoothly implemented and Ms. Hatch has not shown a real desire to break down the barriers between 5th and 6th grade.



EXHIBIT

D

The middle school still operates on an 8 period day and Ms. Hatch has not made any effort to fundamentally change the way the schedule is constructed.

While the middle school classrooms have had major renovations to ensure that every classroom can open up and become a large/double classroom, little to no systematic effort has been made by Ms. Hatch to work to develop classes that are co-taught. The moveable walls are rarely opened up and teachers are still spending most of their day teaching in isolation. STEM classes, integrated social studies/language arts, pairing electives with academics, project-based learning, are all examples of things that could have been done to diminish the separation between grade levels and subjects.

Ms. Hatch has not met this goal.

**Goal #2: To work with the elementary principal to have RtI implemented in grades 1-8**
Little collaboration was done to see grade 1-8 implementation happen. While referrals in SLD are down, on the whole most teachers have very little knowledge of what a Tier 2 or Tier 3 intervention is. A focus has been on screeners more than on actual interventions and most of the work Ms. Hatch did do was in grades 6-8.

Ms. Hatch has not worked to ensure that staff understand what the criteria is for each tier and, more importantly, has not worked to ensure that intervention schedules are understood and systematically implemented. Interventions need to be evaluated based on identifiable data protocols that are monitored based on established criteria. No systematic data collection process is in place that determined the extent to which an intervention has been successful. A clearly communicated plan with data review rooted in intervention options with protocols in place would have been the focus of a successful attempt to meet this goal.

In addition, what effort has been made with RtI has been with a focus on learning issues. Little to no effort has been made to ensure implementation of protocols for behavioral issues utilizing the RtI process to apply existing practice to meet this requirement.

Utilizing Special Education teachers as intervention coaches could have been done to assist in interventions, however this coaching has not been done.

This goal has not been achieved as stated.

**Goal #3: Completion of assessment procedures in the middle school. By the end of the 2011, a majority of courses should have clear assessments linked to power standards in grades 6-12.**

This goal was partially met as stated. Ms. Hatch has ensured her teachers have linked summative assessments to their power standards. However, no effort was made to ensure that formative assessment have been made or are being utilized to gauge student progress toward meeting the standards or learning.

<u>**2012 Goals**</u>

**Ms. Hatch did not make adequate progress toward her 2011 goals. In spite of this lack of achievement she requested that totally new goals on separate issues be developed. The issues not addressed in last years goals are still critical and attention must be given to them. While Ms. Hatch was active is sharing with staff and parents how she did not want to achieve these goals, this activity is primarily a poor reflection on her ability to follow directions. It has not changed what is expected of her. This expectation was not met in 2011.**

**Goal #1: To develop practices and programs that promote diminishing separate buildings and subject manner.**
This goal was not met and the needs are still critical. While Ms. Hatch did not take her July, 2011 mid-year review seriously in terms of changing her practice, hopefully it is clear that she needs to authentically engage in achieving this goal. Her attempts in 2011 were characterized by both passive and overt resistance to achieving this goal.

Evidence of meeting this goal in the future includes but is not limited to the following:

- Literacy Block established in the middle school
- Multi-age and/or looped classrooms successfully implemented
- Adjustments made to the 8 period day schedule
- Subject specialties done collaboratively
- Team teaching of subjects with or between both specialists and classrooms teachers

**Goal #2 Ensure every teacher in grades 1-8 has training and understanding in Tier 2 and Tier 3 interventions.**

This goal was also not met and the needs are still critical.

Evidence of meeting this goal in the future includes but is not limited to the following:

- Universal screeners are understood regarding how to use effectively
- Differentiation strategies are understood and are connected to formative assessment in grades 1-8 for language and math
- A plan that is clearly communicated to all staff that connects intervention strategies, data collection, data protocols, and assessment of strategy effectiveness.

**Goals #3 Mathematic Differentiation instruction is implemented in grades 5-8**

Evidence may include the following:

- Tracking in middle school mathematics is significantly declined
- Teachers will better differentiate instruction for students of all abilities
- 8th grade geometry will be a much reduced/rare strategy of differentiation
- Students should not need to go to the high school for math instruction and math enrichment should be effectively done by middle school teachers

| | | | |
|---|---|---|---|
| Ann Hatch | Date | Dominick Madison | Date |

Signature verifies receipt of review and does not necessarily mean agreement with the findings.

Goals 2010-11

**Goal #1:** To develop practices and programs that promote diminishing separate buildings and subject manner

Evidence of goal met:

1. Literacy block in sixth grade, team taught including special ed.
2. I have multiple ways to schedule for a literacy block in 7th and 8th –will need staffing support to do this
3. Multi-age (5-6). Implementation and working to continue the mac by addressing space and scheduling issues.
4. The 5th grade mac students identify me as their principal.
5. 5th grade students are attending activities in the middle school that in the past have been exclusively for 6-8 students.
6. Adjustments have been made to the 8 period day in mac and 6th grade.
7. Kelly will "loop" with her math students next year.
8. 8th grade civics is divided into two sections (has been three in the past) and team taught with special education
9. Multidisciplinary units throughout the middle school
10. Flexible grouping throughout middle school for all common classes including study skills.
11. Including and working with 4th and 5th grade teachers in my book study.

Ideas discussed:

1. Discussion of a K-8 principal and me being special ed coordinator/school psych to break the building barriers
2. Going to a Principal/ Associate principal model to break the building barriers. It is less challenging to break the barriers when the foundation is set up to do so (administration, budgets, physical space).
3. A mixed literacy block with all of 5th and 6th grade. Was not feasible because the literacy times were moved in 5th grade to accommodate an extra section of exploratories for the mac students.

**Goal # 2:** To work with the elementary principal to have RTI implemented in grades 1-8

Evidence of goal met:

1. Using AIMs web, students K-8 are being universally screened 3 times per year in reading.
2. Using AIMs web, Fontas and Pinell and MAP's, students in K-5 are identified (Tiers). 6-8 AIMs and MAPS are used to Tier students.
3. Grades K-5, intervention blocks were established last school year. We provided interventions for 42 students.



EXHIBIT

E

4. In grades 6-8 all students were assessed three times in reading. Results were discussed with grade level teachers and a plan was established and implemented. At the end of the 2010-11 school year, the plan was evaluated and the results indicated a need for more intensive intervention. Intervention blocks were established for the 2011-12 school year for each grade level including special education, with a specific interventionist assigned (Jerry Bronson and now Christina Golden).
5. We are currently servicing 12 students (6-8) with one student testing out and one currently being testing for possible release. One student has moved from a tier 2 intervention to a tier 3 intervention. K-5 we are currently servicing 52 students.
6. Lucy Hartenbach has spent the majority of time in her coaching with 8th grade, Jerry Bronson and Christian Golden.
7. There have not been any teacher initiated referrals for SLD in the district.

Goal # 3: Completion of assessment procedures in the middle school

Evidence of goal met:

1. All classes have attached assessments in BYOC. The assessments are major assessment (summative rather than formative) because they are linked to power standards. This was completed in June.

Goal Focus for 2012-13

➢ PLC development
➢ RTI-expanding interventions for math and writing

July 18th, 2011

To: Ann Hatch

From: Nick Madison

Re: Apology

I apologize for my use of a profane and inappropriate word in my June, 2011 email
allowing you to be absent from work on September 2nd, 2011. I regret offending you
and assure you that it will not happen again.

EXHIBIT

F

**Memorandum**

From:     Brian Horn, Board President

To:       Dominic Madison, Superintendent
          Ann Hatch, Principal
          Board of Education

Date:     September 21, 2011

RE:       Review of Allegations of Retaliatory Conduct

---

The Board has reviewed the material pertinent to this matter and has concluded that no further Board action is required at this time. Dr. Madison has already submitted an apology for what the Board believes was an inappropriate manner of email communication. No further action is warranted at this time. Therefore, this concludes the matter.

The Board wishes to remind both Dr. Madison and Ms. Hatch that both are under contract with the Brillion School District to perform the administrative responsibilities of their positions in furtherance of the best interest of the school district. Accordingly, Dr. Madison is expected to continue to provide supervision and to assign and delegate responsibility to Ms. Hatch as has previously occurred, without regard to this matter. Likewise, Ms. Hatch is expected to carry out those responsibilities assigned to her and to participate in the evaluation process in a constructive manner. The Board is considering additional measures for both Ms. Hatch and Dr. Madison to assist them in moving forward in a cooperative, productive manner in the interest of the District and its students. However, both are expected to perform in a professional manner commensurate with their professional standing.

Please contact me with any questions.

Sincerely,

Brian Horn
Board President
Brillion School District

**EXHIBIT**

G



# BRILLION PUBLIC SCHOOLS
### Innovatively Educating ... Every Child

District Office                                                    Dominick Madison, PhD
                                                                   District Administrator

June 11, 2012

Ann Hatch
N179 Van Handel Drive
Appleton, WI 54915

RE:   **Statement of Reasons for Nonrenewal Hearing**
      **Administrative Employee – Ann Hatch**
      **Date of Hearing – June 18, 2012 at 7:00 p.m.**

Dear Ms. Hatch:

Per your request, the following reasons are provided for the Administration's recommendation to the Board of Education that your administrative contract be non-renewed after it expires at the conclusion of the 2012-2013 school year.

1.   Not satisfactorily meeting professional goals as stated in the 2010-2011 year-end evaluation, the July 2011 mid-year review, and the 2011-2012 annual review;

2.   Retaliatory behavior following evaluations and a lack of willingness or effort to work with the Superintendent to meet stated goals.

3.   Failure to follow established and directed lines of communication; and

4.   Lack of confidence and trust between you and the Superintendent that limits the effectiveness and ability of the administrative team to operate in the best interests of the District and its students.

The hearing will be held on June 18 at 7:00 p.m. at the District Office. You have demanded that the hearing be held in open session and the hearing will therefore be noticed accordingly. Notice of the hearing will be published Friday, June 15, 2012. In the event you change your intentions and prefer to have a closed session hearing, you may notify me of that preference no later than the close of business Thursday, June 14, 2012.

Sincerely,

Dominick Madison
Superintendent
Brillion School District



EXHIBIT

H